[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and for other relief brought to the Judicial District of New Haven at New Haven. Many of the facts that give rise to this action are not in dispute. The plaintiff and the defendant, whose maiden name was Susan Rice, were married in East Haven, Connecticut, on May 7, 1976. The plaintiff has been a resident of the State of Connecticut for at least 12 months immediately prior to the date of this complaint. The marriage between the parties has broken down irretrievably with no reasonable prospects of reconciliation. Neither the plaintiff nor the defendant are receiving State assistance. No minor children have been born to the defendant wife since the date of marriage of the parties. There are no minor children issue of the marriage.
The court further finds by clear and convincing evidence that the defendant is pregnant and the baby is due to be born in June of 1993 and the plaintiff is not the father of that child.
The plaintiff is 39 years old. His health is very good. He did sustain a fracture to his leg last year but has now returned to work full time. He is continuing to undergo physical therapy for his fractured leg although it does not affect his work. He also suffers from high cholesterol which is kept under control by diet. The plaintiff graduated high school in 1973 from the Eli Whitney Technical School. His diploma was as a machinist apprentice. He worked in that general trade for two years following graduation from high school. Following that employment he was a mechanic at a service station. Those two prior employments took place prior to his marriage to the defendant. The plaintiff is presently a certified emergency medical technician (EMT). He drives a truck for an oil company for part time employment. His full time employment is as a firefighter for the Town of Hamden. The plaintiff also works part time for an ambulance company. The plaintiff has been employed as a full time firefighter for over 11 years. He works a 42-hour work week in that position and also gets some occasional overtime as well as shift differential and holiday pay. Both his job as a full time firefighter and as a part time truck driver for an oil company are secure. CT Page 5253
The defendant is in fine health. Between 1989 and 1993 she did receive medical treatment for migraine headaches and inability to sleep, as well as lack of appetite and nervousness. A physician recommended exercise, diet, Valium to help her sleep, and medication for her migraines. Her symptoms have subsided. The defendant has been employed at Pathmark for 20 years up to the present time. During part of that period she also worked part time jobs. Between 1980 and 1987 her employment at Pathmark was full time. She presently is employed part time at Pathmark. Her last part time job, other than her current part time Pathmark employment, was as a receptionist in a doctor's office where she was employed for approximately six weeks, commencing February of 1993. She was employed as a receptionist working 25 hours per week at $7.50 per hour. She did not have any other part time work prior to the receptionist job for approximately 2-1/2 prior months. Her present employment at Pathmark is for 16 hours a week at $8.50 an hour. That has been her schedule at Pathmark since October of 1992. She has unsuccessfully attempted to work more hours at Pathmark and has also unsuccessfully attempted to find other part time employment.
The defendant testified and the court finds from that testimony that she will be self-supporting within two years.
The parties were tenants for approximately seven years following their marriage. They purchased their family home at 15 Rowe Street, East Haven, Connecticut, in 1983. The purchase price was $60,000.00. They obtained a $48,000.00 mortgage. The balance of approximately $12,000.00 consisted of approximately $8,000.00 from their joint employment savings, $2,000.00 from the defendant's parents as a gift, and a $2,000.00 loan from the plaintiff's parents that has since been paid back. The closing costs were also paid from joint funds. The present fair market value of the family residence as agreed to by stipulation of the parties is $129,000.00. The present first mortgage balance on the property is $44,705.71, leaving an equity in the family home of $84,294.29. The following renovations and improvements have been done to the family home since its purchase: 1) sheet rocking and paneling of the living room in approximately 1983 that was done by the plaintiff and his brother. Insulation and carpeting was also installed; 2) wall paper and brick wall paper of the kitchen; 3) the same work that was done to the living room was done to the den approximately 4 to 5 years ago.; 4) installation of central air conditioning and new duct work; 5) approximately CT Page 5254 $7000.00 was spent for bathroom renovations approximately 4 years ago — this was done from joint funds of the parties; 6) landscaping, including a new chain link fence and installation of a driveway as well as new loam for the lawn. This work was done between 1983 and 1991. The driveway and house painting work was done by contract. The defendant assisted the plaintiff with some of the above work.
The plaintiff vacated the family home on or about August 16, 1991. He had previously left the family home in July of 1991 and it was not until August 16, 1991 that he obtained his own apartment in Branford, Connecticut, and has resided there ever since.
The defendant became pregnant once during the marriage in 1981 but had a miscarriage. Both parties were happy at the prospect of having a child. Both parties went through various tests in order to again have the defendant become pregnant but were not successful. In September 1991, approximately one month after the plaintiff vacated the family residence, the defendant met the individual who is the father of her unborn child. She then did not see him again until approximately August of 1992. She did not have any contact with him between September of 1991 and August of 1992. She did not have any romantic involvement with him until the Fall of 1992.
The parties are in dispute as to the cause of the breakdown of the marriage. From the evidence presented, the court finds that the plaintiff's drinking and his physical abuse of the defendant is the primary cause of the breakdown of the marriage. In Venuti v. Venuti, 185 Conn. 156, 159 (1981), the court stated in part as follows:
 "A review of the record shows that the trial court did not err in finding that adultery was not the cause of the breakdown of the marriage. There is, therefore, no basis in the statutes for the trial court to have considered any adultery by the plaintiff in making its award of alimony and counsel fees. . . ."
The court finds that the defendant's involvement with a third party and her existing pregnancy is not a factor in the cause of the breakdown of the marriage. CT Page 5255
The parties are also in dispute as to the amount of the existing arrearage arising out of current pendente lite orders. From the evidence presented, the court finds that the existing arrearage as of April 29, 1993 is $1,700.00.
The parties received an I.R.S. tax refund in 1993 as a result of a joint filing of 1992 income taxes. The amount of the refund was $2,810.00. In addition, the parties received a State refund of $30.00. The defendant retained the $30.00 State refund with the approval of the plaintiff. The parties are in dispute as to what agreement, if any, they had regarding the $2,810.00 I.R.S. refund. The defendant has received $800.00 of that refund and the plaintiff has retained $2,010.00 of that refund. The plaintiff has spent the $2,010.00 on various bills, including credit card debts.
The defendant has incurred attorney's fees in this proceeding with a balance due of $4,798.95.
The plaintiff presently grosses $1,299.00 weekly as a firefighter. After deducting withholding, Medicare, Social Security and State income tax, his net weekly wage is $862.78. He also has gross weekly wages from his part time job as an oil company driver of $183.40. He owns a 1988 GMC truck with a value of $12,000.00. He has $300.00 in a checking account, $368.00 in a credit union savings account, and $1,500.00 in a savings account. He also owns a motorcycle which is in his name only worth $1,500.00. The motorcycle was purchased approximately three years ago. The plaintiff's GMC truck was purchased in 1988 in his name only. The plaintiff's financial affidavit shows a debt to American Express of $1800.00, a debt to VISA of $2,000.00, a debt to Mastercard of $2,000.00, and a debt to Sears of $500.00. All of those debts were incurred for expenditures on behalf of the plaintiff only. Pendente lite orders were entered in this matter on February 4, 1992. Since that date, the plaintiff has charged in excess of $1,000.00 regarding the present American Express balance, in excess of $1,000.00 regarding the present VISA balance, in excess of $1,000.00 regarding his present Mastercard balance, and in excess of $300.00 regarding his present Sears balance. He has also paid $5,000.00 on his truck loan since February 4, 1992.
The plaintiff's financial affidavit shows a weekly deduction of $100.00 for credit union. That $100.00 deduction goes into CT Page 5256 his credit union savings account that has the balance of $368.00 in it.
The defendant's gross weekly income from Pathmark is $136.11. Her net weekly income is $101.26. Her financial affidavit does not reflect the part time employment that she had at a doctor's office as a receptionist within the previous 13 weeks prior to trial. The defendant's financial affidavit shows a Mastercard debt of $1,000.00, a debt to Robert Rice for a car loan of $1,800.00, a debt to Robert Rice for a loan of $2,000.00, and counsel fees of $4,798.95. She owns a 1984 Oldsmobile with a value of $1,800.00. She also has various personal clothing, jewelry and household furnishings. She has a New Haven Savings Bank savings account with $1,000.00, a checking account with $10.00, and savings bonds of $50.00. She also has a pension plan.
The defendant has accumulated a total of 14-3/8 years of benefit credit through December 1991, and is vested and entitled to a pension benefit when she reaches retirement age. Her monthly pension benefit at age 62 or older will be $388.13.
The plaintiff is eligible to retire on a vested retirement that would entitle him to collect approximately $8,400.00 annually, or $700.00 a month, commencing February 2007.
The parties filed joint income tax returns for the calendar years 1990, 1991 and 1992. The gross taxable income from wages for the parties for the calendar year 1990 was $52,700.80. The gross taxable income from wages for the parties for 1991 was $72,093.00. The defendant, in the calendar year 1991, had total wages from Pathmark of $10,629.88. She also had wages from a part time employment of $3,000.51. The plaintiff had part time wages from Blue Flame Oil Company of $4,092.00 plus wages from his Town of Hamden employment of $54,369.84. The total taxable wages of the parties in 1992 was $67,052.00. The defendant had wages from one part time employment of $1,235.68, wages from a second part time employment of $1,377.21, plus wages from Pathmark of $9,793.64. The defendant also had part time wages from another employment totaling $708.74. The plaintiff had wages from Blue Flame Oil Company of $2,466.00. The plaintiff's wages from the Town of Hamden was $51,470.12.
The parties are in dispute as to whether an award of time limited alimony should be entered in this case. In discussing CT Page 5257 the issue of time limited alimony, the court, in Ippolito v. Ippolito, 28 Conn. App. 745, 751-752 (1992), stated in part as follows:
 "This court has dealt with challenges to an award of time limited alimony on numerous occasions. . . The trial court does not have to make a detailed finding justifying its award of time limited alimony. . . Although a specific finding for an award of time limited alimony is not required, the record must indicate the basis for the trial court's award. Id., 16. There must be `sufficient evidence to support the trial court's finding that the spouse should receive time limited alimony for the particular duration established. If the time period for the periodic alimony is logically inconsistent with the facts found or the evidence, it cannot stand.'. . .
 We have noted that `"[u]nderlying the concept of time limited alimony is the sound policy that such awards may provide an incentive for the spouse receiving support to use diligence in procuring training or skills necessary to attain self-sufficiency."' Roach v. Roach, supra, 506. A time limited alimony award generally is for rehabilitative purposes but other reasons may also support this type of alimony award. Id.
Based on the testimony of the defendant that she will be able to be self-sufficient within two years, this court finds that it is appropriate to enter a time limited alimony award.
This court has considered and weighed the factors set forth in Conn. General Statutes 46b-81(c) in determining the issues of assignment of property and has considered and weighed the factors set forth in 46b-82 in considering alimony. This court has also considered and weighed the factors set forth in 46b-62 in CT Page 5258 determining whether to grant attorney's fees.
ORDER
The court hereby enters the following orders:
A. DISSOLUTION
The marriage of the parties to this action is hereby dissolved on the grounds of irretrievably breakdown and each of the parties are hereby declared to be single and unmarried.
B. ALIMONY
The plaintiff is ordered to pay to the defendant as periodic alimony the sum of $350.00 per week. Said alimony is to terminate upon the earliest of the following events: 1) death of the plaintiff; 2) death of the defendant; 3) remarriage of the defendant; 4) two years from today's date.
Alimony is non-modifiable as to term.
C. BY WAY OF ASSIGNMENT OF PROPERTY
1) The court orders that the family residence located at 15 Rowe Street, East Haven, Connecticut, shown in warranty deed recorded in East Haven Land Records, Vol. 332, page 1065, be placed for sale with a listing chosen by the plaintiff through a multiple listing service realtor. The listing is to take place within 30 days of today's date. The plaintiff is to notify the defendant through the defendant's attorney of the name, address and telephone number of the realtor with whom the property is listed. During the period of time the property is listed for sale, the defendant shall have the exclusive use and occupancy of the family residence, shall have the right to rent the property and collect the rental income therefrom, and shall also be fully responsible for keeping the first mortgage current, as well as keeping the property insured for fire and liability, and shall also keep the real estate taxes current. The defendant is liable for the pro rata share of real estate taxes from today's date to the date of closing. Each party is to inform the other party in writing, by registered mail return receipt, of all offers to purchase the home. The court retains jurisdiction over any issues that may arise involving the use and occupancy of the family residence as well as over the sale price and any other CT Page 5259 issues involving the family residence. When the property is sold, the first mortgage is to be paid in full as well as all customary closing costs, and the balance of the sale is to be divided 65% to the defendant and 35% to the plaintiff. In ordering this division, the court has taken into consideration all of the factors of 46b-81, including the opportunity of each of the parties for future acquisition of capital assets and income, and finds that the plaintiff has a greater such opportunity.
2) All of the furniture, clothes and jewelry in the plaintiff's possession is awarded to the plaintiff.
3) The plaintiff is ordered to pay to the defendant within 30 days of today's date the sum of $1,420.00, which sum represents a one-half equal division of the federal and State tax refund money.
4) The motorcycle shown on the plaintiff's financial affidavit, as well as the GMC truck shown on his affidavit, are awarded solely to the plaintiff.
5) The Town of Hamden Deferred Compensation Plan of the plaintiff is awarded solely to the plaintiff.
6) The 1984 Oldsmobile shown on the defendant's financial affidavit is awarded to the defendant.
7) The personal clothing, jewelry and household furnishings in the possession of the defendant are all awarded to the defendant, except 1) Fire Dept. leather helmet shields mounted in Rec. Room (Approx 36); 2) Commemorative mugs and pitchers from parades, musters and conventions (Approx. 30); 3) Fire Steam Engine Liquor Decantors (2); 4) Brass Fire Nozzles and Fire Hydrant; and 5) Fire Alarm Box and pictures on wall in Rec. Room. The plaintiff is to remove the above items within thirty days from today's date.
8) The New Haven Savings Bank accounts, as well as the United States Savings Bonds, shown on the defendant's financial affidavit are awarded to the defendant.
9) The Deferred Compensation Plan shown on the defendant's financial affidavit is awarded to the defendant. CT Page 5260
10) The plaintiff is ordered to pay all the liabilities shown on his financial affidavit and hold the defendant harmless therefrom.
11) The defendant is ordered to pay the Mastercard liability and the two liabilities to Robert Rice shown on her financial affidavit and hold the plaintiff harmless therefrom.
12) The 1984 Cutlass shown on the defendant's financial affidavit is awarded to the defendant.
13) The plaintiff is ordered to pay to the defendant the $1700.00 arrearage within 30 days from today's date.
D. BY WAY OF ATTORNEY'S FEES
The plaintiff is ordered to pay to the defendant as attorney's fees the sum of $2500.00 by December 1, 1993.
E. MISCELLANEOUS ORDERS
1) The defendant is restored her maiden name of Susan Rice.
2) Each party is ordered to provide to the other party by certified mail return receipt, or registered mail return receipt, with a copy of their respective federal and State income tax returns within 15 days after such returns have been filed. This order is to remain in effect for as long as there is an outstanding alimony order.
Sidney Axelrod, Judge CT Page 5314-a